UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

CASE NO.: 8:13-cr-162-T-24EAJ

vs.

KAMRAN ROUHANI

_____/

**ORDER**

This cause comes before the Court on a Mandate of the United States Court of Appeals for the Eleventh Circuit, which vacated and remanded the forfeiture portion of this Court's final judgment against Defendant Kamran Rouhani. Dkt. 79. On remand, the Court finds that the government failed to offer sufficient evidence at trial or at the sentencing hearing to support a forfeiture money judgment against Kamran Rouhani.

**I.  BACKGROUND**

Defendant Rouhani appealed his judgment and sentence of twelve months and one day of imprisonment following a jury verdict finding him guilty of three counts of wire fraud in violation of 18 U.S.C. § 1343. The Eleventh Circuit affirmed Rouhani's sentence. Dkt. 79 at 10. However, as to the forfeiture money judgment, the Eleventh Circuit found that there was no evidence that any of the proceeds of the wire fraud came to Rouhani *personally* and Aviation Engineering Consultants, Inc. ("AECI"), which did receive the $28,640.09 in proceeds was neither a co-defendant nor co-conspirator in the case. The Eleventh Circuit noted in a footnote that although Rouhani's ownership of AECI may satisfy the alter ego theory of liability, this Court did not make an independent factual analysis that would support awarding a forfeiture money award against

Rouhani on that basis. Dkt. 79 at 15 n.1 (citing *United States v. McLaughlin*, 565 F. Appx. 470, 476-77 (6th Cir. 2014) and *United States v. Peters*, 257 F.R.D. 377, 385-87 (W.D. N.Y. 2009)).

On remand, the Court held a hearing at which the government stated they wished to pursue the forfeiture. The government submitted a memorandum outlining the facts submitted at trial that they argue establish the proceeds of the wire fraud ($28,640.09) came to Rouhani personally as opposed to AECI. Dkt. 85. Defendant filed a Response (Dkt. 86) and the government filed a Reply (Dkt. 93). The Court has also conducted an independent analysis of the facts and evidence available to it from Rouhani's trial and sentencing hearing.

## II.    ANALYSIS

Pursuant to 18 U.S.C. §§ 981(a)(1)(c), the Court may order forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity", which includes wire fraud. However, "[i]t is well-established that a defendant 'cannot be ordered to forfeit profits that he never received or possessed.'" *McLaughlin*, 565 Fed. Appx. at 474 (quoting *United States v. Cantorinis*, 692 F.3d 136, 145 (2d Cir. 2012)). In order for the Court to extend the scope of the forfeiture award to profits acquired by an unindicted company under a theory of alter ego, the government must offer sufficient evidence for the Court to make a "detailed factual analysis of the relationship between the defendant and the corporation." Dkt. 79 at 15 n.1 (citing *Peters*, 257 F.R.D. at 385-87).

Based on the testimony and evidence presented at trial, Rouhani was the sole shareholder and president of AECI during the relevant time period. According to AECI's Chief Operating Officer, Mark Hansson, Rouhani handled administrative functions and technical tasks related to the manufacturing and shipping of commercial aircraft components. Dkt. 75 at 34. Hansson testified that Rouhani was the only person at AECI qualified to certify parts for the Federal

Aviation Administration, which was critical for the company's commercial aviation sector. Dkt. 75 at 29, 34-35. Without Rouhani, the commercial aviation sector could not exist and AECI would have to lay off a significant portion of its employees. Dkt. 75 at 35.

As president of the company, Rouhani had close relationships with its customers and was involved in the sales aspect of the company, including the bidding process. Dkt. 58 at 18-20; Dkt. 75 at 29. AECI had forty-eight employees (Dkt. 75 at 38) and there was testimony at trial that Rouhani hired two of those employees (Dkt. 57 at 135, 161). AECI had an engineering department that was headed by its director, John Bugle. Dkt. 59 at 98. Bugle, along with "a half a dozen" other AECI employees and Rouhani, worked on the project that was the subject of the wire fraud in this case. Dkt. 59 at 67. Bugle, along with Rouhani, communicated with L-3 Communications Integrated Systems, LP ("L-3", the wire fraud victim) regarding the purchase order and contract between AECI and L-3. Dkt. 59 at 65, 104-05. Rouhani personally kept L-3 informed as to the status of the job and was L-3's main point of contact at AECI. Dkt. 59 at 65; Dkt. 57 at 246-48.

Rouhani personally traveled to several vendor facilities that specialized in the fabrication and bending of parts for welding to determine whether the vendors were able to provide AECI with what they needed for the L-3 job. Dkt. 59 at 63. Rouhani personally inspected the parts before they were shipped to L-3. Dkt. 59 at 67. And he personally paid to re-test the defective parts at issue in the case. Dkt. 59 at 90.

At sentencing, the Court inquired into Rouhani's finances and the finances of AECI, which is an S corporation (Dkt. 75 at 48). Rouhani, as the president and sole shareholder of AECI, determined whether and to what extent AECI would pay its employees bonuses. *Id.* at 45. Rouhani's monthly income from AECI was $3,250. Dkt. 75 at 31; PSR ¶39. Rouhani purchased a number of homes for his family members with distributions from AECI and continued to pay the

tax and insurance costs on those properties. Dkt. 75 at 45-46. Rouhani's family lived in the houses rent free. *Id.* In 2013, Rouhani and his wife, along with AECI, gave a $25,650.00 gift to his church. Dkt. 75 at 46; Dkt. 69-2.

Defendant is correct that as the sole shareholder of an S corporation, Rouhani assumed all tax liability for AECI because the responsibility for the payment of taxes owed by the S corporation passes through to its shareholders. *In re Northlake Foods, Inc.*, 715 F.3d 1251, 1253 n.2 (11th Cir. 2013). The income of an S corporation is treated as the personal income of the individual stockholder. *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1352 (11th Cir. 1987). Thus, the government's argument as to Rouhani's "control" over the finances of AECI does not give rise to a conclusion that Rouhani had "complete domination" over AECI such that he was its alter ego. As the sole shareholder of AECI, Rouhani was entitled to take a salary and distributions from AECI. Rouhani's involvement in the determination of employee bonuses is also in line with his role as sole shareholder of AECI.[1]

The facts and testimony at trial and at the sentencing hearing regarding Rouhani's role in the company do not give rise to an award of forfeiture against Rouhani because they do not show that Rouhani was the alter ego of AECI. Although Rouhani was the person in charge of AECI (as its sole shareholder and president), worked at the company on a daily basis, and made many high level decisions regarding AECI's finances, the facts at trial and sentencing were not sufficient to establish that Rouhani had complete domination of the corporation such that forfeiture would be appropriate. *See, e.g., McLaughlin*, 565 Fed. Appx. at 471, 476 (finding that even though

---

[1] The government's joint actor theory is misplaced. AECI is an S corporation so it was, to an extent, under Rouhani's control due to its corporate nature and tax treatment. Moreover, AECI was never indicted in the case, was not a co-conspirator, and there were no facts at trial that showed AECI acted "in concert" with Rouhani to commit wire fraud. The facts cited by the government only show that Rouhani exerted a high level of control at the company.

McLaughlin was the company's president, worked at the company on a daily basis, and made all managerial decisions, including hiring and firing decisions as well as disbursements of profits, such facts were not sufficient to establish the "complete domination of the corporation" in order to support the alter ego theory of forfeiture liability).

Finally, the parties dispute whether counsel's statements at sentencing regarding Rouhani's "complete domination" of AECI may be regarded as evidence for purposes of the Court's forfeiture analysis. Dkt. 86 at 3 n. 3; Dkt. 93 at 2 n. 1. The case law submitted by the parties neither supports nor refutes the conclusion that counsel's statements at sentencing are evidence. However, counsel's statements at sentencing regarding Rouhani's role at AECI simply reinforced and reiterated the facts brought out in trial. For example, the statements made by Rouhani's counsel that Rouhani ran AECI on a daily basis and that it could not function without him were not new facts. As stated above, the facts at trial showed that Rouhani was the president and sole shareholder of AECI, ran it on a daily basis, that he was the main point of contact for L-3, and that he made financial decisions on behalf of AECI. As to AECI's finances and Rouhani's finances, at sentencing counsel for Rouhani merely explained and elaborated upon – at the request of the Court – the evidence and filings before the Court, including financial information contained in the Presentence Investigation Report (which Rouhani himself also testified to at sentencing), the sentencing memorandum submitted by Rouhani (Dkt. 69), and the attachments to the sentencing memorandum, specifically the receipt for the $25,650 contribution to Rouhani's church (Dkt. 69-2). Thus, the Court need not decide whether it could rely on counsel's statements as evidence because the matters discussed by counsel were already before the Court in the form of evidence at trial and filings and evidence at sentencing.

**III.    CONCLUSION.**

A review of the facts and evidence at trial and at the sentencing hearing does not support that Rouhani had complete domination of AECI such that AECI could be considered the alter ego of Rouhani.  The $28,640.09 in proceeds from the wire fraud were paid to AECI not Rouhani. Accordingly, the Court denies the government's motion for a forfeiture money judgment in the amount of $28,640.09 against Kamran Rouhani.

**DONE AND ORDERED** at Tampa, Florida, this 30th day of April, 2015.

SUSAN C. BUCKLEW
United States District Judge

**Copies furnished to:**
Counsel of Record